_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

FEB 29 2000

CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Emily BRILEY, et al.                            *
                                                *
               v.                               *          Civil Action No. JFM 98-3394
                                                *
BD. OF EDUC. OF BALTIMORE COUNTY, et al.        *
                                            *****

## MEMORANDUM

Plaintiff Emily (Emmaline) Briley is a learning disabled and emotionally disturbed child who wished to transfer from a private school to Baltimore County Public Schools ("BCPS"). She and her family argue that Baltimore County Public School officials failed to design an adequate individualized educational program ("IEP") reasonably calculated to enable her to receive educational benefits, and that consequently Emily was denied a free appropriate public education ("FAPE"), as required by the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. (1997). Plaintiffs and defendants both move for summary judgment. For the reasons stated herein, defendants' motion for summary judgment will be granted and plaintiffs' motion for summary judgment will be denied.

States must ensure that a FAPE, which includes special education and related services, be made available by a state or local school district to meet the individual needs of each disabled child. See 20 U.S.C. § 1412. To this end, states, through a local education system, must develop an IEP to identify the special education needs and related services that meet the needs of each child with a disability. See 34 C.F.R. § 300.341. States are not required, however, to guarantee any student "the

1



best education, public or nonpublic, that money can buy," but only an appropriate education. Hessler v. State Bd. of Educ. of Md., 700 F.2d 134, 139 (4th Cir. 1983).

Emily Briley suffers from Attention Deficit Hyperactivity Disorder and Oppositional Behavior Defiant Disorder, and has had an extensive history of various behavioral problems, emotional disturbances, and learning difficulties. Her emotional issues, compounded with her alcohol and drug use, eventually led to suicide attempts and a psychiatric commitment at the age of twelve. With prior notice to and financial assistance from BCPS, the Crossleys, Emily's mother and stepfather, enrolled Emily at Idaho's private Boulder Creek Academy, a highly structured, therapeutic treatment facility and school for emotionally troubled, learning disabled children, where she received between three and six hours of therapy each day. By the end of her stay at Boulder Creek, Emily was no longer actively suicidal, attended class, and displayed increased confidence. Because of financial constraints, however, Emily's parents removed her from Boulder Creek and contacted Baltimore County Public School officials in order to transfer Emily for the 1997-1998 academic year.

The Admission, Review, and Dismissal ("ARD") process for Emily began in March 1997 to design an IEP and recommend an appropriate educational placement for Emily upon her return from Boulder Creek. Emily was administered a cognitive personality and achievement test, an educational test, and a classroom observation. The BCPS psychologist, who relied in part upon the discharge summary from the mental hospital to which she had been committed, a report from Boulder Creek's school psychologist, observations by Ms. Crossley, and a letter from Emily's doctor, determined that Emily was learning disabled and needed continued special education

2

intervention, but did not conclude that she suffered from an emotional disorder. The ARD team did not contact any teachers or counselors from Boulder Creek, but after testing found significant problems with Emily's memory and areas of written expression, math calculation, and attention. The team noted that Emily had a history of inconsistent classroom performance due to impulsiveness, interpersonal difficulties, and depressive symptoms. Furthermore, psychological testing revealed a history of attention and concentration problems, learning disabilities with weaknesses in the areas of visual perception and numerical facility, and difficulties with her attention span. The ARD team also considered the input of Ms. Crossley that Emily, in spite of her history, was presently doing well emotionally. The team ultimately determined that Emily could pursue her high school diploma and that her needs could be met in Baltimore County. The ARD team found that the results of the testing and evaluations performed by BCPS were consistent with the information obtained form Boulder Creek.

On May 23, 1997, a final IEP was developed for Emily using the information received from the child's mother, Boulder Creek, and the other professionals who had evaluated Emily. This IEP directed that Emily should receive both direct and indirect special educational services, and was signed by Ms. Crossley without objection. The ARD placement decision identified a need for a "sm[all] class, highly structured classroom using multi-sensory approach to meet [her] needs." Pls.' Opp. Ex. C(13) at 1. The team advocated placing her in a structured special education class for more than half of the school day and in a regular classroom setting for the remainder, and noted that "Emily needs a small class environment to meet [her] individual needs; Emily needs more structure

3

due to the emotional overlay due to the diagnosed depression," id. at 2, and that "[e]motionally Emily would have a difficult time adjusting/reentering a large high school environment," id. at 3

The ARD team indicated that Emily's home school of Dulaney High School was not appropriate because of its large size and the fact that students with whom Emily had previous counterproductive involvement attended the school. Loch Raven High School, on the other hand, was believed to be appropriate because it was a smaller school and had the facilities to address Emily's needs. Ms. Crossley nonetheless desired a private placement, even after BCPS suggested an additional one-on-one teacher's aide. BCPS proposed an alternative school, Good Shepherd, which was a private, all-girls school that had been suggested by the mother as well as Emily's psychologist at Boulder Creek. When Emily and her mother ultimately visited the school, however, Ms. Crossley rejected the program because of its residential component, high level of security, and her dissatisfaction with its math program, and because Good Shepherd was supposedly directed toward seriously emotionally disturbed children as opposed to learning disabled children. At this point, in June or July, BCPS advised Ms. Crossley that the self-contained classroom at Loch Raven and the one-to-one aide continued to be the placement decision for Emily, and stated this again in writing in late August. At about this same time, on June 4, 1997, Emily and her mother interviewed at the private, residential Eagle Hill School in Massachusetts and Emily received a tentative placement there, unbeknownst to and with no prior warning given to BCPS. Emily enrolled at Eagle Hill on September 8.

The Administrative Law Judge who heard the case in a due process hearing initially dismissed the case on the basis of a technical point of Maryland law and thereafter decided against

plaintiffs on the merits. Denied reimbursement for tuition payments in the due process hearing, plaintiffs brought suit pursuant to the IDEA. Plaintiffs contend that BCPS did not comply with the procedures of that Act, did not develop an IEP reasonably calculated to enable her to receive educational benefits, and consequently denied Emily a free appropriate public education.

Plaintiffs' first specific complaint is that BCPS did not consider Boulder Creek representatives' input as to Emily's educational needs. If a student is being served in a non-public school, representatives from that program must be invited to provide information relative to the student's educational needs. A BCPS representative testified, however, that it was not the practice of the team to contact the private placement if data from the other facility were available, and in that case only if the data differed substantially from that developed through testing by the ARD team. Because data was in fact obtained from Boulder Creek, including from Emily's school psychologist there, and because BCPS found the data sets to be consistent, it cannot be said that information derived from Emily's program at Boulder Creek was not considered in the development of the IEP. Furthermore, plaintiffs have presented no evidence to show that BCPS was aware or should have been aware that there was any additional information beyond the Boulder Creek and mental institution reports that should have been considered. Ms. Crossley was present during the development of the IEP and failed to notify any ARD team member that additional information needed to be considered beyond that included in the reports. Thus, the failure of BCPS to contact Boulder Creek personnel specifically while developing the IEP, in light of the other considerations, did not constitute a serious procedural violation. In addition, the allegation that persons knowledgeable about the child were not consulted in making the placement decision is contradicted

5

by the fact that BCPS drew upon information from a variety of sources and the placement decision was made by a group of individuals knowledgeable about the child, about the meaning of evaluation data and placement options, and in accordance with the least restrictive environment rules.

Ms. Crossley also asserts that the failure to include a regular classroom teacher as a member of the ARD team, as mandated, caused the development of the IEP to be flawed. In this case, the ARD team did review and consider grade reports from Boulder Creek and included in its team two specialists in special education who both had experience with Emily. There was no indication from the grades, Ms. Crossley, or any other reports from Boulder Creek that the educational capabilities and needs of the child were not adequately reflected in the testing performed or the conclusions reached by the ARD team. Therefore, the failure to include a regular education classroom teacher from Boulder Creek did not constitute, in and of itself, a material procedural violation causing the IEP to be inappropriate.

The argument that the ARD team failed to observe Emily in a regular classroom setting is also unpersuasive. Since Emily received instruction in Idaho and not in Maryland, observation in the classroom setting could not be easily accomplished. BCPS conducted an educational assessment of Emily while another team member performed a classroom evaluation by observing Emily while she took the test, and the team had access to the child's grades and other psychological reports from Boulder Creek. While this is obviously not a true classroom setting, it was, as the ALJ noted, an observation of the child when she was listening to information, listening to instruction, and processing information directed at her. More importantly, this process was made known to her parents who failed to object at that time. Even were this considered a violation of the procedural

6

requirement that the child be observed in a classroom setting, the violation was not a substantial procedural violation that acted to deny the child a FAPE.

Plaintiffs further argue that the child was not assessed in all areas related to her suspected disability because the child's emotional and social shortcomings were not appropriately considered or assessed. They refer to Emily's depression and psychiatric commitment, her treatment at Boulder Creek for depression and emotional difficulties, and her school psychologist's report of December 2, 1996, recommending therapy to address her feelings of inadequacy and insecurity. Plaintiffs further allege that the BCPS psychologist's evaluation was cursory and the team was remiss in not conducting an independent assessment of the child's emotional status. The evidence established, however, that educational testing showed the child to be functioning at an appropriate level. The BCPS psychologist evaluated the information provided by the parents indicating that Emily was doing well emotionally and was interacting well with her peers. The psychologist also considered the reports from the mental institution (and their relative age), the grade and psychological reports from Boulder Creek, and Ms. Crossley's input. The BCPS psychologist found that Emily experienced difficulties and attentional issues, but that there was no emotional component that needed to be considered in writing the IEP. Ms. Crossley did not raise an objection to that observation and opinion.

Plaintiffs' assertion that since the case was referred to the Central ARD ("CARD"), a CARD meeting should have been held, is unpersuasive. The ARD team decided to place Emily in the public Loch Raven High School as early as May 1997 and advised Ms. Crossley of this recommendation at that time. Only because Ms. Crossley alone insisted on a private placement did

the team refer her to a CARD representative, whose suggestion of Good Shepherd was subsequently rejected by that same parent. Loch Raven consistently remained the recommendation of the ARD team as the most appropriate and least restrictive environment for Emily, and therefore there was no requirement for a CARD referral to explore other public or non-public placements.

Finally, plaintiffs argue that their procedural rights were violated because BCPS failed to provide proper notice regarding the Loch Raven placement decision. The team provided oral notice to Ms. Crossley both when the initial recommendation of Loch Raven was made in May, again in June or July when Ms. Crossley rejected Good Shepherd, and finally in written form at the end of August. The fact that Ms. Crossley was aware of the placement decision, that neither the child nor her parents were denied the opportunity to participate in the ARD process, and that Ms. Crossley was involved in the entire process regarding the ARD determination must be taken into account. While the written notice itself arguably was untimely, it was sufficient in light of the previous repeated oral notices and consistent with federal regulations.[1]

In short, there were no material procedural violations or substantive decisions made by the ARD team--which at all times included Emily's mother--that deprived Emily of a FAPE. Ms. Crossley was present at all ARD meetings, received procedural safeguards at each meeting, and was aware of the assessments used, the recommendation of each ARD member, and the placement decision as early as May. An alternative placement at Good Shepherd was made in an effort to

---

[1]Plaintiffs' allegation that BCPS is culpable for failing to develop an IEP for Emily while she was enrolled at Boulder Creek is frivolous. Both parties agreed in advance that Boulder Creek was approved at the time and that Boulder Creek would notify BCPS if changes were needed in the existing IEP, which did not occur. Furthermore, there was no other evidence that changes were ever needed during the two-year period.

8

accommodate Ms. Crossley's request for a non-public placement, but a CARD referral was not mandated. Ms. Crossley had adequate time and opportunity to challenge the Loch Raven decision or to make changes and adjustments to the IEP, which was signed and approved by Ms. Crossley at the time it was drafted. The Board of Education offered to provide Emily with a statutorily mandated free appropriate public education that could be implemented in the program designed for her at Loch Raven and, accordingly, plaintiffs are not entitled to reimbursement of her private school tuition.[2]

For these reasons, defendants' motion for summary judgment will be granted and plaintiffs' cross-motion for summary judgment will be denied. A separate order effecting the rulings made in this memorandum is being entered herewith.

February 29, 2000

_____
J. Frederick Motz
United States District Judge

---

[2]I do not reach the propriety of the Eagle Hill placement because the IEP was properly designed and Emily was not denied a FAPE.

9